## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

**STEVEN FARABAUGH**, an individual,

     Plaintiff,

v.

**ISLE, INC.**, a Delaware corporation, **ISLE GROUP**, a foreign entity, **ISLE GROUP, UK**, a foreign entity, and **ISLE UTILITIES**, a foreign entity.

     Defendants.

---

### COMPLAINT AND JURY DEMAND

---

Plaintiff Steven Farabaugh ("**Mr. Farabaugh**"), through his undersigned counsel, submits this Complaint and Jury Demand against Isle, Inc., a Delaware corporation, Isle Group, a foreign entity, Isle Group UK, a foreign entity, and Isle Utilities, a foreign entity (together, "**Isle**" or "**Defendants**").

### PARTIES

1.    Mr. Farabaugh is an individual who, at all times relevant to this matter, resided at 1620 Platte Street, #B322, Denver, Colorado 80202.

2.    Isle, Inc. is a Delaware corporation.  Upon information and belief, its United States ("**U.S.**") headquarters are located at 2600 El Camino Real, Suite 600, Palo Alto, California, 95306.

3.    Isle Group, Isle Group, UK, and Isle Utilities are foreign entities.  Their global headquarters are located at 2nd Floor, 89 Albert Embankment, Vauxhall, London, SE1 7TP,

United Kingdom.  Isle Group, UK's registered business address is 61 Downs Wood, Epsom Downs, Surrey, KT18 5UJ, United Kingdom.

4.      Upon information and belief, Isle, Inc., Isle Group UK, and Isle Utilities are wholly-owned subsidiaries of Isle Group.

## JURISDICTION AND VENUE

5.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over claims brought under 42 U.S.C. § 2000e-5(f)(3), and supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1391 because at all times relevant to the claims herein, Mr. Farabaugh resided and performed work for Isle within this judicial district.

## ADMINISTRATIVE PROCEDURES

7.      On or about August 5, 2019, Mr. Farabaugh filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("**EEOC**") and the Colorado Civil Rights Division related to unequal treatment based on national origin, disability, and retaliation.

8.      On or about September 14, 2020, the EEOC issued a Dismissal and Notice of Rights to Mr. Farabaugh, which included a Notice of Suit Rights, authorizing Mr. Farabaugh to bring the present lawsuit.

## GENERAL ALLEGATIONS
### *Employer and Employee Information*

9.      Mr. Farabaugh was born in the United States.

10.     Isle is a United Kingdom ("**U.K.**") based company that provides consultancy services to water utilities around the world.  Isle provides support to municipal water utilities and others.  Isle has a global team of more than 80 engineers and scientists.

11.     Mr. Farabaugh is a licensed Professional Engineer with more than twenty years of experience related to Isle's work.

12.     Mr. Farabaugh began work for Isle on March 29, 2017, as a Senior Consultant.

13.     Piers Clark ("**Mr. Clark**"), from the U.K., is Isle Group's Founder and Chairman and is based in the U.K.

14.     Cristina Ahmadpour ("**Ms. Ahmadpour**"), Isle Inc.'s President/Managing Director (Americas), was born in the US, and is based in California.

15.     Ms. Ahmadpour was Mr. Farabaugh's direct supervisor during his work for Isle.

16.     Mr. Farabaugh performed the majority of his work for Isle from his home in Denver, Colorado.

17.     Mr. Farabaugh, Ms. Ahmadpour, and their U.S., U.K., and global colleagues all have electronic mail addresses that end in "@isleutilities.com."

18.     Katherine Easter, ("**Ms. Easter**"), Isle's Global HR Director, from the U.K., was Mr. Farabaugh's human resources contact.

19.     Ms. Ahmadpour, despite being President/Managing Director (Americas) of Isle, Inc., told Mr. Farabaugh on more than one occasion that she did not have independent decision-making authority and that Mr. Clark made many of the important decisions for Isle, Inc.

20.     Mr. Farabaugh's employment was terminated by Isle on July 8, 2019.

***Mr. Farabaugh is Assaulted by a Coworker at Isle's Retreat for Managers, October 9-11, 2018***

21.    From October 9-11, 2018, Isle held a conference for senior managers in Scotland (the "**Retreat**"), which Mr. Farabaugh attended along with Isle employees from Isle subsidiaries all over the globe.

22.    On Wednesday, October 10, 2018, during a conversation between Mr. Farabaugh and Mr. Clark about Ms. Ahmadpour and Mr. Farabaugh's role with Isle, Mr. Clark called Mr. Farabaugh a "terrorist."

23.    On Thursday, October 11, 2018, the group went to a nearby restaurant for dinner.

24.    During the dinner, Mr. Clark stood to address the group.  He then unbuckled his belt and unfastened his pants, exposing his underwear.  He then thrust his crotch into Ms. Ahmadpour's face as she was seated nearby.

25.    After dinner, the group moved to a bar on the ground floor of the restaurant. While the group was gathered in the hotel bar, Thomas Jacks ("**Mr. Jacks**"), Isle's Head of Dealflow, slapped Ms. Ahmadpour on her backside/upper thighs with an open hand, something Mr. Farabaugh personally witnessed.

26.    Mr. Jacks is a U.K.-born, U.K.-based Isle employee.

27.    On the evening of October 11, 2018, as the group walked from dinner back to the group's lodging, Mr. Jacks assaulted Mr. Farabaugh by tackling him from behind.

28.    A coworker walking in front of Mr. Farabaugh fell down.  Mr. Farabaugh walked over to her and reached out his hand to assist her in getting back on her feet.

29.    After approaching Mr. Farabaugh silently from behind, Mr. Jacks pinned Mr. Farabaugh's arms to his side and then, pushing Mr. Farabaugh forward, tackled him to the

ground using the force of Mr. Jacks's entire body.  When the pair landed, Mr. Jacks was on top of Mr. Farabaugh, who was lying face down on the ground.

30.     Mr. Farabaugh had no warning the attack was coming; Mr. Jacks approached him from behind and gave no audible forewarning.

31.     Mr. Jacks also tackled U.S.-born Isle employee Brittany Burch ("Ms. Burch") on the way back to the group's lodging.

32.     Mr. Jacks and Mr. Farabaugh continued the walk back to the group's lodging with the rest of the group.  For the remainder of the walk, Mr. Jacks made insulting comments and threats toward Mr. Farabaugh.  No one did anything to stop Mr. Jacks's aggressive and threatening behavior toward Mr. Farabaugh.

33.     Mr. Farabaugh, Ms. Ahmadpour, and Ms. Burch were three of four U.S. employees to attend the Retreat and all three were physically assaulted by Mr. Jacks, a U.K. coworker.

34.     Upon his return to the group's lodging, Mr. Farabaugh reported the physical assault to both Ms. Ahmadpour and Ms. Easter.

35.     The next morning, Mr. Clark visited Mr. Farabaugh in his room at the lodging and asked Mr. Farabaugh how he was doing.  Mr. Farabaugh responded that he was not doing well because he had been tackled from behind by Mr. Jacks.

36.     Mr. Clark told Mr. Farabaugh that he had heard what happened, had spoken with "everyone" involved, and concluded that it was Mr. Farabaugh who was to blame for the incident – even the blind-side attack by Mr. Jacks.

***Mr. Farabaugh's Protected Conduct and Termination***

37.     Later that day, October 12, 2018, Mr. Farabaugh spoke with Ms. Easter and Ms. Ahmadpour in separate conversations.  During these conversations, Mr. Farabaugh informed both Ms. Easter and Ms. Ahmadpour that he believed he was targeted by Mr. Jacks and Mr. Clark because he was from the US.   The conversation with Ms. Easter occurred at the lodging and the conversation with Ms. Ahmadpour occurred in the lobby at Ms. Ahmadpour's separate hotel after her lunch with coworkers.

38.     Mr. Farabaugh told Ms. Easter and Ms. Ahmadpour that he felt Mr. Jacks targeted him because he is from the US.

39.     Mr. Farabaugh also told Ms. Easter and Ms. Ahmadpour that he felt Mr. Jacks was intentionally targeting "the Americans" in the group, and that it was his opinion that Mr. Jacks would have assaulted the fourth employee from the U.S. if Mr. Farabaugh had not stopped him.

40.     In response to his complaints about Mr. Jacks, Ms. Easter and Ms. Ahmadpour told Mr. Farabaugh that he had misinterpreted the events at the Retreat and what he identified as unlawful and discriminatory conduct was instead "cultural differences" between Isle's U.S. and U.K. employees.

41.     Shortly thereafter, Mr. Farabaugh made a formal complaint about the events that transpired at the Retreat.  Ms. Easter requested that Mr. Farabaugh provide his written account of events.

42.     On October 25, 2018, Mr. Farabaugh submitted to Ms. Easter his Victim Incident Statement, outlining his physical assault by Mr. Jacks, the physical assault of his U.S. colleagues,

and his observation that: "I don't [] have sufficient information to know whether [Mr. Jacks] only targeted US employees or if [] there were many others.  There could be a pattern and there could be an underlying motive or issue with US employees."

43.     Ms. Easter conducted an investigation and provided her findings to Mr. Farabaugh thereafter.

44.     In her written summary of her investigation findings, Ms. Easter confirmed that Mr. Clark called Mr. Farabaugh a "terrorist," but qualified the statement by saying Mr. Clark had called Mr. Farabaugh an "internal terrorist."

45.     Ms. Easter confirmed that Mr. Clark unbuckled his belt and lowered his pants enough to expose his underwear during an event at the Retreat.

46.     Ms. Easter confirmed that Mr. Jacks assaulted Mr. Farabaugh, calling it "high jinks" and indicating that the others tackled that night "found the incident to be good natured and in good fun."

47.     Ms. Easter also confirmed that Mr. Jacks "hit" Ms. Ahmadpour on her backside, "below her rear-end."  Ms. Easter concluded, however, that Mr. Jacks had merely "playfully" hit Ms. Ahmadpour.

48.     Ms. Easter indicated that the bulk of these issues would be addressed by "having a larger discussion about best practices at Company events."  Upon information and belief, no disciplinary action was taken against Mr. Clark or Mr. Jacks for their conduct during the Retreat.

***Isle Takes Work From Mr. Farabaugh and Then Terminates His Employment***

49.      On October 14, 2018, Mr. Farabaugh emailed Ms. Easter and Ms. Ahmadpour making a "formal notification" that he was still experiencing back and shoulder pain following being assaulted by Mr. Jacks at the Retreat.

50.      On October 26, 2018, in a company-wide email, Isle announced that Mr. Jacks's role with the Isle was expanding and two new positions were being created to support Mr. Jacks's work as Head of Dealflow.

51.      On November 28, 2018, Ms. Ahmadpour sent Mr. Farabaugh her review of his performance.  The review was inaccurate and, to Mr. Farabaugh, was an unfair and retaliatory.

52.      Then, in January 2019, Mr. Farabaugh was assigned to a project team which included Mr. Jacks.

53.      On January 14, 2019, Mr. Farabaugh complained to management, telling them he did not feel it was fair for Isle to expect him to continue working with Mr. Jacks after what had transpired at the Retreat.

54.      Isle chose to remove Mr. Farabaugh from the project, not Mr. Jacks.

55.      This decision by Isle management left Mr. Farabaugh with less work and, as a result, fewer billable hours.

56.      Indeed, the project Mr. Farabaugh was staffed to work on with Mr. Jacks was never replaced in Mr. Farabaugh's portfolio, leaving Mr. Farabaugh unable to meet his production metrics.

57.      At the end of January 2019, Mr. Farabaugh had telephone conversations with Ms. Easter and Mr. Clark.  Ms. Easter asked Mr. Farabaugh why he was still working at Isle and

made it clear she wanted him to resign.  Mr. Clark brought up the incident at the Retreat and told Mr. Farabaugh he was not surprised to hear Mr. Farabaugh had been injured that night, suggesting he was aware, prior to the assault, that Mr. Farabaugh would be physically attacked.

58.     Also at the end of January 2019, Ms. Ahmadpour told Mr. Farabaugh that senior management wanted him "gone" because he was allegedly "checked out."  Mr. Farabaugh denied being "checked out," and went on to win more than $175,000 in business prior to his termination just five months later.

59.     In the summer of 2019, Isle hired a consultant with significantly less experience than Mr. Farabaugh, and nonetheless began funneling work to her, rather than to Mr. Farabaugh, further stunting his ability to reach his metrics.  Mr. Farabaugh was also asked to mentor and train this individual, which was non-billable work.

60.     Mr. Farabaugh and Ms. Ahmadpour had regularly-scheduled monthly meetings. As part of the process, Mr. Farabaugh completed monthly reports to share with Ms. Ahmadpour.

61.     In the monthly meeting each month following his assault and injury at the Retreat, Mr. Farabaugh reported to Ms. Ahmadpour that he was still in physical pain from the injury and his injuries continued to have an impact on his work and personal life.  Mr. Farabaugh also reported each month that Isle had still failed to take responsibility for his injury.

62.     In June 2019, Ms. Ahmadpour asked Mr. Farabaugh how he could move past the assault.  Mr. Farabaugh responded that Isle needed to accept responsibility for what had happened and guarantee that none of the actions that took place at the Retreat, including that he was targeted for being from the U.S., or the way he was treated thereafter, including in how Isle dismissed his concerns following the investigation, would happen again to any Isle employee.

63.     At the next month's meeting, on July 8, 2019, Ms. Ahmadpour notified Mr.

Farabaugh that he was being fired, due in part to his inability to "get past" the events that

occurred at the Retreat, and because he continued to report his injury to her on a monthly basis.

She also claimed that Mr. Farabaugh was unable to reach his goals.

## FIRST CLAIM FOR RELIEF
### Harassment and Discrimination in Violation of Title VII and CADA
### 42 U.S.C. § 2000e-2(a) and Colo. Rev. Stat. § 24-34-401, *et seq*.

64.     Mr. Farabaugh incorporates each of the allegations set forth above, as if fully set

forth herein.

65.     At all times relevant hereto, Isle was and is subject to Title VII and CADA.

66.     As a person born in the U.S., Mr. Farabaugh is a member of a protected class

under Title VII and CADA due to his national origin.

67.     At all times relevant hereto, Mr. Farabaugh was qualified to perform the duties of

his position as Senior Consultant.

68.     Mr. Farabaugh's supervisor and Isle knew or reasonably should have known that

Mr. Farabaugh was U.S.-born.

69.     Mr. Farabaugh was discriminated against and harassed by Isle's CEO (Mr. Clark),

Mr. Jacks, and Ms. Easter, all U.K. employees, because of his national origin, including by being

called "terrorist" by Isle's CEO.

70.     Isle engaged in preferential treatment of Mr. Jacks over his U.S. counterpart,

including when Isle decided to remove Mr. Farabaugh from a project in favor of Mr. Jacks,

leaving Mr. Farabaugh with less work and fewer billable hours.

71.     Isle's leadership engaged in discriminatory practices with malice and/or with reckless indifference to Mr. Farabaugh's protected rights, as set forth in the preceding paragraphs.

72.     Mr. Clark apparently spoke directly with Isle's U.K. employees who had witnessed Mr. Jacks's assault of Mr. Farabaugh, but never asked Mr. Farabaugh for his perspective of the events.

73.     The hostile and discriminatory environment and disparate treatment was unwelcome and detrimentally affected Mr. Farabaugh's work environment, and he viewed the treatment as subjectively hostile and abusive.  Said treatment would also be viewed as objectively hostile and abusive to a reasonable person.

74.     Mr. Farabaugh's treatment by Isle denied him equal terms, conditions, and privileges of employment, thereby violating Mr. Farabaugh's rights as guaranteed by Title VII and CADA.

75.     As a result of the conduct of Mr. Farabaugh's supervisor and Isle as above alleged, Mr. Farabaugh has been damaged in an amount to be determined at trial.  Mr. Farabaugh's damages include but are not limited to, compensatory damages for back pay, lost job benefits, damages for emotional distress and pain and suffering, reasonable attorneys' fees and costs, and pre- and post-judgment interest.

## SECOND CLAIM FOR RELIEF
**Retaliation in Violation of title VII and CADA  42 U.S.C. § 2000e, the Civil Rights Act of 1964 (as amended) and Colo. Rev. Stat. § 24-34-401, *et seq*.**

76.     Plaintiff incorporates each of the allegations set forth above, as if fully set forth herein.

77.     Plaintiff engaged in protected activity by making complaints about being targeted based on his national origin, including to Ms. Easter and to Ms. Ahmadpour.

78.     Plaintiff also provided information during Ms. Easter's investigation that supported his allegations that Mr. Jacks was targeting U.S. employees, including himself, Ms. Ahmadpour, and Ms. Burch.

79.     Mr. Farabaugh received a negative performance review following his complaint about the physical assault at the Retreat and his complaints about being targeted because of his national origin.

80.     Mr. Farabaugh was further retaliated against for complaining to management about being placed on a project with Mr. Jacks and by being removed from the project without replacement work, making it harder for him to reach his metrics.

81.     These adverse actions taken against Mr. Farabaugh, including the termination of his employment, were motivated by his protected activity.

82.     As a direct and proximate result of Isle's actions, Plaintiff has suffered damages including lost wages and benefits, front pay, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses, in amounts to be determined at trial.

83.     Plaintiff also seeks damages for attorneys' fees and costs and pre- and post-judgment interest.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Farabaugh prays for entry of judgment in his favor on his claims for relief, and against Isle for:

a.     Economic damages, including without limitation, back pay and lost benefits;

b.     Compensatory damages, including without limitation, loss of opportunity for professional growth and additional financial incidental and consequential damages;

c.     Non-economic damages for emotional distress, pain and suffering, inconvenience, mental anguish, loss of reputation, and other non-pecuniary losses;

d.     Reasonable attorneys' fees and costs;

e.     Pre- and post-judgment interest; and

f.     Such other and further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

Respectfully submitted this 11th day of December, 2020.

By:   /s/ *Leah P. VanLandschoot*
        Leah P. VanLandschoot, #35723
        Amy M. Maestas, #46925
        THE LITIGATION BOUTIQUE LLC
        1720 S. Bellaire Street, Suite 520
        Denver, Colorado 80222
        T: 303.355.1942
        F: 303.355.2199
        lvanlandschoot@thelitbot.com
        amaestas@thelitbot.com

        **ATTORNEYS FOR PLAINTIFF
        STEVEN FARABAUGH**

**Plaintiff's Address:**
3210 Esperanza Crossing, Apt. 5319
Austin, Texas 78758